UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:06CR586 CEJ |
| KELLY VANDYKE LOVE, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). A hearing was held on the Defendant's motion to suppress evidence and statements on December 6, 2006. Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Gary Sodomo is a Detective with the St. Louis County Police Department. He is currently assigned to the Bureau of Drug Enforcement and is an experienced narcotics investigator.

On September 22, 2006, a St. Louis County Police Officer observed a vehicle parked in the parking lot of the Travelodge Motel in Woodson Terrace, Missouri. The vehicle bore license plates from the state of Texas, and upon checking with the hotel clerk, the officer determined that the person driving the vehicle identified himself as the Defendant Kelly Love, and gave his home address as Dallas, Texas. The clerk further told the officer that Love arrived at 2 o'clock in the morning and paid cash for his room. Based on this information and Sodomo's knowledge of the activities of drug couriers, the detectives decided to watch the vehicle and set up a surveillance so that they could effect

this activity. At about 10 a.m., the officers observed the Defendant come out of the motel and stand next to his vehicle while talking on a cellular telephone. He appeared to be looking around the parking lot and walking around it as if he were looking for someone who was going to meet him at that location. He continued to look around and talk on the cell phone for some time, eventually going back into the motel.

Again, at about 10:30 a.m., the officers observed the Defendant come out of the motel and go into the parking lot while talking on his cell phone. At this same time, a Honda automobile drove onto the parking lot being driven by an older male individual. The Defendant stood at the window of this vehicle for approximately five minutes, talked to the individual and then went back into the motel when the individual left the parking lot.

At about 11 a.m., the Defendant told the desk clerk at the Travelodge that he would be staying a second night, and asked that he be moved to a room across the hall where he could see the parking lot so he could watch his car. At approximately 12 p.m., the officers observed the Defendant come out of the motel, enter his vehicle and drive to a nearby restaurant. While in the restaurant, he appeared to order food to be taken out, and left the restaurant with a bag of food and re-entered his vehicle.

At this time, Sodomo asked a uniformed and marked vehicle to stop the Defendant's car if a traffic violation could be observed by the marked unit. Sodomo did this because some of the Defendant's activities made Sodomo believe that he could possibly be transporting drugs or other illegal material. This activity included the fact that the Defendant was from Dallas, Texas, which is a source city for narcotics; the fact that the Defendant paid for his room in cash which leaves no paper trail; the fact that the Defendant arrived at the motel at 2 a.m., indicating that he had driven straight

through from Dallas, Texas; the fact that the Defendant had asked to switch rooms so that he could observe his vehicle, a trait of transporters of illegal narcotics or other illegal items; and the fact that the Defendant had an arrest record even though the arrest record was not for trafficking in narcotics.

Sodomo, after a traffic stop, wanted to ask the Defendant routine questions to determine, based on the Defendant's responses to these questions, whether he would ask the Defendant for permission to search the vehicle. When the Defendant exited the restaurant parking lot, he was followed by the marked unit until the officers observed the Defendant's vehicle enter the eastbound lanes of Interstate 70 without signaling a left turn to merge onto the highway. At this point, the Defendant was stopped by the marked car, and Sodomo approached the vehicle with the uniformed officer. Sodomo asked the Defendant where he was from, and how he traveled to the area. The Defendant stated that he had traveled up Interstate 40 to Interstate 55 to get to St. Louis. Sodomo was aware that the shortest route from Dallas to St. Louis was Interstate 44, and it was out of the Defendant's way to travel in the manner which the Defendant stated. Sodomo asked the Defendant what he was doing in St. Louis, and he stated that he was in St. Louis to attend a funeral in Cahokia, Illinois. Sodomo noted that the location where he was is a fair distance from Illinois, and asked the Defendant where the funeral was to take place and what the arrangements were. The Defendant could not tell Sodomo where the funeral was to take place nor give any specifics about the arrangements. Sodomo asked the Defendant where he was staying, and he stated that he was staying at the Travelodge in the area, but did not remember the room number because the motel had made him switch rooms earlier that day. Sodomo also asked the Defendant if he had ever been arrested, and he stated that he had not been arrested. Sodomo also asked the Defendant his occupation, and

3

the Defendant said he was a nurse at a triage center but was unable to answer Sodomo's question as to the duties of nurses at the triage center.

At this point, Sodomo asked the Defendant if he was carrying any cash, drugs, or weapons, and the Defendant stated he was not. Sodomo then asked the Defendant if he could search his vehicle, and the Defendant readily consented to the search of the vehicle and volunteered that his suitcases were in his room, and that if they wanted to search his suitcases in the hotel that was fine with him. The officers asked Love if he would move his car off the highway so that they could conduct the search and Love agreed to do so. Love entered his vehicle and drove his car a short distance off the road where the officers met up with him and the search commenced. During the search, Sodomo found one kilo of cocaine in a hidden compartment in the Defendant's bumper which could be accessed through the trunk of the car. The hidden compartment was quite large and could have held much more than the one kilo of cocaine. Also seized from the trunk were Bounce dryer sheets. The Defendant was then placed under arrest for possession with intent to distribute narcotics.

## Conclusions of Law

A. January 22, 2006 Stop of the Defendant's Vehicle

Based on the above facts, the undersigned concludes that the stop of the Defendant by the uniformed officers and Det. Sodomo was lawful as was the search of the Defendant's vehicle. As to the initial stop and detention of the Defendant, both the Supreme Court and the Eighth Circuit Court of Appeals have held that: "Any traffic violation, however minor, provides probable cause to make a traffic stop." United States v. Mazza, 93 F.3d 1390, 1396 (8th Cir. 1996); Whren v. United States, 116 S.Ct. 1769 (1996). Further, it makes no difference that officers may have some ulterior motive in making the traffic stop, such as their suspicion that the Defendant is transporting illegal items. See

4

Whren, supra. In addition, in Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that a police officer may stop a person reasonably suspected of criminal activity and question the person briefly in an effort to confirm or dispel the criminal activity. Whether or not officers possess reasonable suspicion is to be determined by the court "not in terms of library analysis by scholars, but as understood by those versed in law enforcement." United States v. Atlas, 94 F.3d 447, 450 (8th Cir.1996). The courts afford a great deal of deference to conclusions of an officer because the officer may detect criminal activity from conduct that may seem innocent to the untrained eye. United States v. Cortez, 449 U.S. 411, 418-22 (1981). The Supreme Court has held that considered together, several innocent acts may be enough to show reasonable suspicion. United States v. Sokolow, 490 U.S. 1 (1989). In the case now at bar, Sodomo was aware of several factors that led him to believe that the Defendant could possibly be transporting drugs, including: that the Defendant was from a source city for narcotics; that the Defendant paid for his room in cash and left no paper trail; that the Defendant arrived at the motel at 2 a.m., indicating that he had driven straight through; that the Defendant asked to switch rooms so that he could observe his vehicle, a trait of transporters of illegal items; and, that the Defendant had an arrest record, even though the arrest record was not for trafficking narcotics. In addition to the above, prior to stopping the Defendant, uniformed officers observed a legitimate traffic violation, that is, merging onto an interstate highway without signaling. The Defendant, according to Sodomo's testimony, was given a traffic ticket for this violation.

Further, as to the eventual expansion of the traffic stop to the point where Sodomo asked for permission to search the vehicle, United States v. Johnson, 58 F.3d 356 (8th Cir. 1995), is a case similar to the one now at bar. In United States v. Johnson, supra, the defendant was stopped for speeding and asked to sit in a highway patrolman's car. He was questioned as to his point of origin,

5

his destination, and purpose of his trip. When the trooper was not satisfied with the defendant's responses to his questions, the passenger in the defendant's car was also asked further questions and gave contradictory responses. Because these responses aroused the trooper's suspicions as to whether or not the trip was legitimate, the defendant was asked if he was carrying anything illegal and if the car could be searched. When the defendant consented to the search, the trooper discovered that the gas tank on the vehicle had possibly been altered, and asked the defendant if he could drive the car to the highway patrol headquarters so that the car could be thoroughly examined. In upholding this procedure, the court stated as follows:

> We have recently clarified that any traffic violation, however minor, provides probable cause for a traffic stop...During a traffic stop, reasonable investigation includes asking for the defendant's driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose. Likewise, an officer may engage in similar routine questioning of the vehicle's passenger to verify information provided by the driver...Moreover, if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer my broaden his inquiry and satisfy those suspicions...If reasonably related questions raise inconsistent answers, a trooper's suspicions may be raised so as to enable him to expand the scope of the stop and ask additional more intrusive questions...As in Ramos, the Johnsons immediately and voluntarily consented to the search of their vehicle. In these circumstances, the district court properly denied Johnson's motion to suppress.

Johnson at 356.

Much the same situation exists in the case now at bar, except in the case now at bar, the justification for the stop and the expansion was actually stronger than it was in Johnson, supra. In the case now at bar, prior to the legitimate traffic stop, Sodomo had what amounted to reasonable suspicion to stop the vehicle in order to question the Defendant briefly to confirm or dispel his suspicions that the Defendant was perhaps carrying drugs or illegal items. See Terry, supra. After

stopping the Defendant and questioning the Defendant as to his destination and purpose, Sodomo received several contradictory or suspicious responses. These included the following: that the Defendant had taken a circuitous route from Dallas to St. Louis, and had not taken the most direct route; that the Defendant was in St. Louis to attend a funeral in Cahokia, Illinois, but could not give any information to Sodomo about where the funeral was to take place or any arrangements; that the Defendant stated that he was a nurse at a triage center, but was unable to answer any questions as to the duties of nurses at a triage center; that the Defendant switched rooms because the motel told him to switch rooms rather than him requesting to switch rooms so he could watch his vehicle; and, finally, that the Defendant told Sodomo that he had never been arrested when Sodomo knew from the Defendant's arrest record that he had been arrested. At this point, along with the other information that Sodomo possessed prior to the stop, the undersigned concludes that Sodomo's suspicions were sufficiently raised so that he could expand the scope of his questioning and ask the Defendant if he were carrying any illegal items, and if Sodomo could search the vehicle.

As to the search of the vehicle, the undersigned concludes that a consent given to the Defendant to search his vehicle was voluntarily given and, thus, valid. Police officers may search a vehicle if they obtain consent from someone who has adequate authority over the vehicle. Consent is voluntary if it is the product of free choice, and not given under coercion or duress. Voluntariness is a fact question to be determined from the totality of the circumstances present. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Matlock, 415 U.S. 164 (1964). Further, one need not necessarily be aware that he may refuse to consent in order to make consent voluntary. Among the factors to be considered in determining whether consent is voluntary include the following: the length of time a person is detained and questioned; whether the person was threatened,

physically intimidated, or punished by police; whether the Defendant relied on promises made by police; or whether the consent occurred in a public or in a secluded place. See United States v. Chaidez, 906 F.2d 377 (8th Cir. 1990). Applying the above law to the present case, the undersigned concludes that the consent was voluntary. First, the Defendant was the driver of the vehicle and in complete control of the vehicle, and had adequate authority to grant the search. In addition, the Defendant was not threatened, coerced, or intimidated by Sodomo; no promises were made to the Defendant by Sodomo to obtain his consent; consent was given while the Defendant was seated in his own vehicle on a public highway; the Defendant was not restrained in any way; and the Defendant evidenced a cooperative attitude with the police officer both in granting the search and in volunteering that the officer could search his luggage any time he desired. Based on all of the above, the undersigned concludes that Love voluntarily consented to all aspects of the search of his vehicle, and thus, the undersigned concludes that the search of the vehicle was lawful as was the discovery and seizure of the cocaine in the bumper of the vehicle as well as the fabric softener in the trunk.

### B. Statements Made by Love to Det. Sodomo

Further, the undersigned concludes that the Defendant was not in custody for purposes of being given his Miranda warnings during the initial stop and consent search of the vehicle. Further, the undersigned concludes that the statements were voluntarily made. The Supreme Court has held that in most Terry stop situations and traffic stops such as the one in the case now at bar, the Defendant is not in custody for purposes of being given his Miranda warnings. In so holding, the Court stated as follows:

> The stop and inquiry must be 'reasonably related in scope to the justification of their initiation.' Typically, this means that the officer may ask the detainee a moderate number of questions confirming or dispelling the officer's suspicions. . .The comparatively non-threatening character of detentions of this sort explains the absence

8

of any suggestion in our opinion that Terry stops are subject to the dictates of Miranda. The similarly non-coercive aspects of ordinary traffic stops prompt us to hold that persons temporarily detained pursuant to such stops are 'not in custody' for purposes of Miranda.

Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984).

The determining factor as to whether a defendant is in custody is whether or not a reasonable person in the defendant's position would believe he was in fact in custody or under arrest. Berkemer v. McCarty, supra. In United States v. Boucher, 909 F.2d 1170 (8th Cir. 1990), a highway patrolman stopped the defendant for a traffic violation. After approaching the vehicle, he requested the defendant to get out of his pick-up truck. As the defendant left his truck, the officer observed a pistol partially concealed between the seats of the truck. The officer immediately patted down the defendant and asked him to sit in his patrol car. He did not tell the defendant that he had observed the weapon or that he was going to arrest him for carrying a concealed weapon. While the officer and the defendant were seated in the patrol car, the officer asked the defendant if he had any weapons or drugs in his truck. The defendant said he had no weapons or drugs in the truck. When the truck was eventually searched pursuant to consent, the officer recovered the gun that he had observed, a second loaded weapon, and over fifty pounds of marijuana. In holding that the defendant's initial statement should not be suppressed, the court stated as follows:

> A reasonable person in Boucher's position would not have considered Cooper's questioning in the patrol car as a custodial interrogation. Boucher was unaware that Cooper had seen the gun in the seat. Boucher had no reason to suspect that Cooper knew of the gun or anything else in the pickup truck at that point, and had no reason to believe that he was suspected of anything other than speeding. Furthermore, as noted above, Cooper was already aware of the gun in the pick-up, and it was reasonable for him to question Boucher about it prior to Miranda warnings.

United States v. Boucher, 909 F.2d 1170, 1174 (8th Cir. 1990).

9

Based on the above law, the undersigned concludes that the Defendant was not in custody when answering Sodomo's questions. The Defendant was in a public place either by the side of the road on Interstate 70, or in a parking lot of the motel prior to his parked car being searched. The Defendant had driven his car to the parking lot and met up with the police officers so his car could be searched. He was not physically restrained in any way, nor was he threatened or coerced in any way to either move his vehicle or to grant the search or to talk to the officers. Further, as stated, the Defendant was very cooperative with the officers, and all the questions asked by Sodomo were related to the reason for his stop, and the Defendant's statements were voluntarily made. Therefore, the statements should not be suppressed.

## Conclusion

Therefore, based on the above, the Defendant's motion to suppress evidence and statements should be denied.

\* \* \*

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Evidence and Statements (Doc. #18–dated November 6, 2006) be **denied**.

Further, as to the motion to suppress, the parties are advised that they have until **January 16, 2007**, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

      /s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE

Dated this  5th  day of January, 2007.